## No. 24,977.

### STATE OF KANSAS, *Appellee*, v. O. F. BROWN, *Appellant*.

#### SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Motion for Change of Venue Properly Overruled.* A motion for a change of venue on the ground of local prejudice and the bias of the trial judge is held to have been properly overruled.

2. SAME—*Disqualification of Juror—Conflicting Oral Evidence—Question of Fact for Trial Court.* Where in a criminal prosecution a juror in the course of examination as to his qualifications states that he has neither formed nor expressed an opinion on the merits of the case and after a conviction affidavits are filed of his having previously expressed a belief that the defendant was guilty, which are denied by his own affidavit, the overruling of a motion for a new trial on the ground of his disqualification is not subject to review, because the decision must be regarded as influenced to some extent by the appearance and manner of the juror while testifying on his *voir dire*.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed October 6, 1923. Affirmed.

*Eustace Smith, J. R. Beeching,* and *William H. Burnett,* all of Hutchinson, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* and *H. F. Brown,* county attorney, for the appellee; *R. C. Davis,* and *Don Shaffer,* both of Hutchinson, of counsel.

The opinion of the court was delivered by

MASON, J.: On January 22, 1923, O. F. Brown was convicted of an assault upon Carmen Trabulse with intent to commit rape. He appeals.

1. Complaint is made of the overruling of a motion for a change of venue on the grounds that public opinion had been so inflamed against the defendant as to prevent his having a fair trial in the county and that the district judge was prejudiced against him.

The defendant in his verified motion said that bitter and inflammatory newspaper articles charging him with being guilty had been published in the county, causing the employment of counsel to assist the county attorney in the prosecution, and that by reason of such articles the American Legion had a public meeting at which false statements were made against him, resolutions condemning him were passed, and additional counsel to assist the state were employed.

Evidence was introduced of the use of the following headlines in a Hutchinson paper during the latter part of October, 1922: "Little Assyrian Girl Wins Brother's Freedom. Sheriff Clark Goes to Aid of Faithful Sister." "State and Legion to be Prepared at the 'Dutch' Brown Hearing. May Ask that Bond of Man be Increased." "Brown is Bound Over; His Bond Now $5,000; Attorneys Ask $50,000. Counsel Complains at Conduct of Newspapers and Legion in Demanding Vigorous Prosecution of the Case." "Brown Case May Come Up This Term."

In addition, the following six paragraphs were shown to have been published in the same paper during the months of December and January:

"Serious charges will be preferred against the person who asked Carmen Trabulse to allow the state case against Orville Brown, Sterling man, to be continued until the April term of court, if that person can be located, Judge W. G. Fairchild said yesterday."

"A letter from the girl, who is at her home in Highland Park, Mich., informed local officers that an attempt had been made to persuade her to allow the case to go over until the April term of court, because of 'the illness of the defendant's mother.' The man who asked the favor the girl said represented himself as the mayor of Biltmore, Kans., and gave his name as Glenn."

"County Attorney W. H. Burnett was instructed to start an investigation to determine the identity of this stranger who made a fruitless trip to Michigan. Prosecution will result if the identity of the man is learned. Had the trip been successful, it is pointed out, the case would likely have been dismissed because of lack of evidence. Instructions have already been sent to Miss Trabulse to be ready for the trial next week."

"There was no effort made to continue the case when it was called in district court yesterday morning for setting. It is assumed that Brown will be present at the trail. He was freed under $5,000 bond."

"Carmen Trabulse, Assyrian girl with only a slight knowledge of the English language, first came to Hutchinson to effect the release of her brother, Fred Trabulse, alias Alexander, a war veteran who had been arrested by city police on a charge of breaking into a hamburger wagon. Alexander had escaped from the county jail, where he was awaiting trial on a grand larceny charge, and had returned to his home after he had learned that his mother was seriously ill."

"The girl was led to believe that Brown would aid her in securing her brother's liberty and, according to her charges, was attacked by Brown. Attorneys, retained by the American Legion to aid the girl, secured Fred Trabulse's release on condition that his sister would return to appear against Brown. A great deal of interest has been taken in the case and court attachés believe that Sterling people will be in prominence at the trial as a

delegation from that city has been active in the interest of the little Assyrian girl."

No presumption can arise that the publication of this matter so prejudiced the people of the county as to prevent a fair trial being held there, and the defendant's affidavit that such a result had attended it is a mere conclusion without substantial probative force.

The contention that the district judge was prejudiced rests upon evidence to this effect: After the preliminary examination the attorneys went to the court room and there in the presence of the judge discussed the matter of having an immediate trial, the state's attorneys desiring it because the complaining witness lived in Michigan. An application in behalf of the state for a trial at the term of court then in progress (that begun in September) was informally presented and refused. A brother of the complaining witness, who had been convicted on a criminal charge, was paroled by the judge and at the request of the county attorney one of the conditions of the parole was that she should appear at court during the January term.

The judge, in refusing the change of venue, said, among other things: "I don't even know the defendant; never saw him in my life until now . . . I haven't even heard what is purported to be the facts in this case. I haven't read the articles in the papers. I don't know anything about it." Manifestly there was no error in overruling the motion for a change of venue.

2. A juror, who sat in the case, testified in the course of his examination as to his qualifications that he had no opinion as to the guilt or innocence of the defendant; had read some of the newspaper articles in the city papers, but not all through; had never discussed the case on the streets; and had not formed or expressed any opinion concerning it. On a motion for a new trial the affidavits of three persons were presented in behalf of the defendant to the effect that in the latter part of October this juror in conversation with them in a Smoke House in Hutchinson had said (all of the affidavits giving these exact words as the substance of his statement): "Brown is as guilty as hell. He ought to be in the penitentiary and I would like to help put him there." The state filed an affidavit of the juror explicitly and absolutely denying the statement attributed to him and denying having ever talked with any of the three affiants about the Brown case.

The State v. Brown.

The issue on the motion for a new trial was purely one of veracity. If the juror had orally given his testimony in contradiction of the three affidavits introduced by the defendant the ruling of the district court would obviously be final, for it is only where a question of fact is decided wholly upon written evidence that the decision is subject to review here. That the amount of oral testimony is small in proportion to the written evidence does not affect the rule. (*Truitt v. Becktold,* 74 Kan. 871, 87 Pac. 188.) This principle might appear to have been departed from in *Record v. Ellis,* 97 Kan. 754, 156 Pac. 712, but there in the view of this court the oral evidence had no substantial tendency to contradict the depositions upon the strength of which the finding of the trial court on a particular issue was reversed. It has been explicitly determined that where all the evidence upon the question of the qualification of the juror is oral the trial court's decision is conclusive (*The State v. Moore,* 79 Kan. 688, 100 Pac. 629; *The State v. Bassnett,* 80 Kan. 392, 102 Pac. 461) and the principle is the same where only a part of the evidence is oral. The situation here is not materially different. The juror was not called personally before the court upon the hearing of the motion, but the trial court had already heard him testify upon the subject matter of the inquiry while the jury was being impaneled, thus having an opportunity of observing his appearance and manner, which is denied to this court. The same situation was presented in *The State v. McLemore,* 99 Kan. 777, 784, 164 Pac. 161, where the overruling of a motion for a new trial was affirmed. The judgment in that case was afterwards reversed (101 Kan. 259, 166 Pac. 497) but upon grounds not relating to the qualification of the juror. The ruling on the motion for a new trial must be upheld.

The judgment is affirmed.