ANNA PLEVA, PLAINTIFF-RESPONDENT, v. SAMUEL GOOT-
ZEIT, DEFENDANT-APPELLANT.

Submitted October 12, 1934—Decided February 4, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER
and BODINE.

For the appellant, *Reynier J. Wortendyke, Jr.*

For the respondent, *Edward A. Markley.*

The opinion of the court was delivered by

PARKER, J. In its fundamentals, the case belongs to the
class of which *Siggins* v. *McGill,* 72 *N. J. L.* 263, is typical.
The following paragraph taken from the brief for respondent
sufficiently states the facts which on the evidence the jury
was entitled to find:

"The action was for personal injuries sustained by the
plaintiff upon leaving the office of a Dr. Irwin I. Harris at
254 Jackson avenue, Jersey City, where she had been for
dental treatment. Dr. Harris was a tenant on the second floor
of the building which was owned by the defendant who con-

trolled the common passageways thereof. The plaintiff was descending the common stairway from the second to the first floor when she was caused to fall by reason of its defective condition due to defendant's negligence."

The points made in the brief for appellant (there was no oral argument) and which are supported by suitable grounds of appeal, are:

"I. The trial court abused its discretion in denying defendant's motion for a mistrial and in commenting upon the matter of insurance while the jury was being selected.

"II. Plaintiff was not entitled to any recovery for loss of earnings in this case.

"III. The trial court erroneously charged the jury that contributory negligence is the reverse of negligence."

As we conclude that there should be a reversal on the first point, it will be unnecessary to treat the others in detail: but as the case must be retried, it may be well to say that the second point seems not well taken as the bill of particulars furnished some months before the trial did not bar proof of damages incurred after it was served. Also that the error pointed out by the third point, due apparently to lack of accurate phrasing of the charge on a subject as to which the legal rules are elementary, and as to which they were properly charged after exception had been taken, was probably cured in a legal sense, though the exception might better have been forestalled by charging correctly in the first place. To say that contributory negligence is "the reverse of negligence" is not only confusing, but wrong. The "reverse of negligence" is care.

Turning to the first ground: as the jury was being selected, counsel for plaintiff questioned juror No. 3 before he was sworn, pursuant to *Pamph. L.* 1911, *p.* 220 (*Cum., Supp. Comp. Stat.* 1924, *p.* 1651), "for the purpose of eliciting information upon which he may determine whether or not to interpose (a) peremptory challenge." The statute goes on to specify "the purpose of disclosing whether or not the juror is impartial as between the parties to the suit and without interest therein or in [the] result thereof." This, in

civil causes (*Lamble* v. *State,* 96 *N. J. L.* 231) seems to permit such interrogation in advance of any challenge and as a basis for a peremptory challenge only. The examination was not taken by the stenographer at the time, but the judge epitomized it thus:

"The court: * * * For the purpose of the record let the record show that the question propounded by counsel was that he noticed that juror number three, Alexander McKenzie, was listed as a bookkeeper. Mr. Markley—There wasn't any reference to that. The only reference was after that. The court—Wait a minute. In substance, number three was listed as a bookkeeper—was that it? Mr. Markley—Number three was on the list as a bookkeeper. The court—(Continuing) And counsel asked him who he was bookkeeper for and the juror responded giving the name of the concern he worked for. The juror was then asked what kind of concern it was and he said it was an insurance company. He was then asked what kind of insurance and he said his firm wrote all kinds of insurance, and then he was asked whether or not his company wrote insurance risks covering tenement house and apartment house properties and he said yes."

Defendant's counsel then moved for a mistrial, and the following colloquy ensued:

"The court—The question that has been asked is addressed to the sound discretion of the court. The court thinks as a matter of fact it is a very proper question to ask. The court is going to allow it. Mr. Wortendyke—May I have an exception, your honor? The court—Yes. I might say that the attitude of the court in this particular, for the purpose of the record in case this case is carried up, is because of the fact that a case was tried here yesterday that took the best part of two days. The jury was out for six hours. One of the jurors was listed as a broker and as a matter of fact he was in the insurance business and he is alleged to have made certain remarks in the jury room with relation to matters of this sort, and I think as a matter of justice that no man should be permitted to sit on a jury where there is any possible question of bias; and I think, therefore, if a man is in

the insurance business insuring tenement house properties—which I know nothing about but which I take from the questions of counsel—that he should not in fairness to the litigants be permitted to sit on a jury. Mr. Wortendyke—The court's statement puts me in rather an embarrassing situation and I think that my duty to my clients compels me to pray an exception to the court's statement at the present time. The court—You have your exception."

At the end of the case the court charged the jury (and on this particular point apparently to the satisfaction of defendant) that they were to ignore all reference that had been made to the question of insurance, &c. But this, in our estimation, did not cure the manifest error committed by the trial judge, first, in bringing into the case, and in the presence of the jury, his account of what had happened the day before, including hearsay as to what some juror in another case had said in the jury room, together with a ruling on the eligibility of a certain class of juror, which under the statute was for the decision of counsel and not of the court (the statute looking only to peremptory challenges), and secondly, in overruling the request for a mistrial, which was a fitting challenge to something in the way of testimony by the court, unsworn and irrelevant, or if relevant, incompetent. See *State* v. *Raymond,* 53 *N. J. L.* 260, 262.

A general test of reversal laid down in section 27 of the Practice act of 1912 is that after examination of the whole case, it must appear that the error injuriously affected the substantial rights of a party. The case before us seems to be conspicuously one in which that condition obtains; and the judgment is therefore reversed, to the end that a new trial be had.