FRANK ROBERTS, PLAINTIFF-RESPONDENT, v. HARRY
SAUNDERS, DEFENDANT-APPELLANT.

———

FRANK ROBERTS, PLAINTIFF-RESPONDENT, v. JACK
RASHTI, DEFENDANT-APPELLANT, AND HARRY SAUN-
DERS, DEFENDANT-RESPONDENT.

Argued October 20, 1936—Decided April 12, 1937.

For the plaintiff-respondent, *Bolte & Miller*.

For the defendant-appellant Harry Saunders, *Siracusa & Backer*.

For the defendant-appellant Jack Rashti, *Garrison & Weaver*.

The opinion of the court was delivered by

PARKER, J.  The plaintiff-respondent, Roberts, while walking in an easterly direction on the north side of Arctic avenue in Atlantic City, New Jersey, was injured just after crossing Maryland avenue when an automobile owned and operated by the defendant Rashti ran up on the sidewalk and struck him after a collision between that car going north on Maryland avenue and an automobile owned by the defendant Joseph Saunders, and driven by the defendant Harry Saunders, going east on Arctic avenue.

Roberts instituted this action in negligence against Rashti, Harry Saunders and Joseph Saunders.  All the defendants joined issue.  The defendant Rashti filed a counter-claim for property damage against the defendant Harry Saunders, and the defendants Harry Saunders and Joseph Saunders each filed counter-claims against the defendant Rashti; Harry Saunders for personal injuries and Joseph Saunders for property damage to his automobile.

The action of the plaintiff, Roberts, against the defendant Joseph Saunders, was nonsuited or verdict directed for defendant on the ground that there was no proof that the automobile owned by Joseph Saunders and operated by Harry Saunders was being operated at the time of the accident on the business of the defendant Joseph Saunders.  The counter-claim of Rashti against Harry Saunders was also nonsuited, and there was no exception to that ruling.

The remaining issues were submitted by the trial court to the jury, which returned a verdict in favor of the plaintiff, Roberts, against both defendants, Jack Rashti and Harry

Saunders, in the sum of $30,000, and a verdict in favor of Harry Saunders against the defendant Jack Rashti in the sum of $200. No verdict of any kind was returned on the counter-claim of Joseph Saunders against the defendant Rashti for property damage to his automobile. On rules to show cause, the plaintiff accepted a reduction of the verdict against Saunders and Rashti to $20,000, and judgment was entered for that amount and is before us on this appeal.

A number of grounds of appeal are argued in each case: some of which, though meritorious and in our view intrinsically sufficient for reversal, are unavailable for technical procedural reasons. We conclude, however, that the judgments should be reversed for other reasons presently to be stated.

The first error leading to reversal consists in the exclusion by the trial court of a question to the plaintiff on cross-examination. Plaintiff had testified that as he was about to cross Maryland avenue, his attention was attracted to the Rashti car by loud blowing of its horn some distance down the street. On cross, he was asked, and denied, that two days later at the hospital he had stated that no horn was blown until the two cars collided. He admitted his signature to a paper shown him, and was then asked whether it had been presented to him by a Mr. Gohl connected with the police department. An objection to this question was sustained and exception noted. Later, on defendant Saunders' case, Gohl was called as a witness, testified to the interview at the hospital, and that he, Gohl, wrote the statement and plaintiff signed it. The paper was then offered in evidence and excluded by the court over exception. A copy is printed in the state of the case and reads in part, "he was going to[o] fast to stop and never slowed up at corner and never blew his horn."

It was clearly error to exclude this paper. It is argued that the error was harmless, as Gohl's testimony to what plaintiff had said was already before the jury. Of course Gohl had so testified; but defendant was entitled to have the jury inspect the paper itself with plaintiff's admitted signature—his written impeachment of his own testimony about

the loud blowing of the horn; and to gauge that testimony by his own signature and not merely by the oral testimony of another contradicting his denial of having said no horn was blown. If Rashti was indeed going at top speed and blowing no horn at a built-up crossing, the fact would be of importance as tending in some measure to exonerate Saunders. Moreover, the paper was an admission by a party to the suit, and Saunders was entitled to it in that aspect as well.

Another error calling for a reversal is the action of the trial court in charging supposedly in the language of the Traffic act of 1928, and amendment of 1931 as follows:

"I want to call your attention at this point to two or three provisions of the Traffic act, and these deal with conditions which have some application to the allegations of negligence in this case:

"Section 2 of Article 8: Excepting as herein otherwise provided, every driver of a vehicle shall grant the right of way at all times to any vehicle approaching from his right.

"Section 12, Subdivision a: Vehicles approaching at intersections. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two vehicles enter an intersection at the same time, the driver of the vehicle on the left shall yield the right of way to the driver on the right. Now, if you find that there has been a violation of either one or both of those provisions of the Traffic act, that in itself is not conclusive evidence of negligence; but if you find it to be a fact, it is a fact that you may take into consideration in determining whether or not either one or the other or both of these defendants was guilty of negligence at the time and place in question."

The accident was in 1935. Section 2 of article VIII had been expressly repealed in 1934. *Pamph. L., p.* 339. In excepting, counsel pointed out that section 2 was repealed either expressly or by implication by section 12, enacted later. We incline to concur in that view, and consider that the 1934 express repealer is indicative of the legislative view on that point.

These considerations lead to a reversal of the judgment as to Saunders; and under the conditions existing in this case we think that there should be a similar reversal as to Rashti. This was the old rule before the Practice act of 1912 which embodied a tentative set of rules, later adopted for the most part by the Supreme Court, one of which reads as follows: (Rule 131) "In case a new trial is granted it shall only be a new trial of the question or questions with respect to which the verdict or decision is found to be wrong, *if separable.*" (Italics ours.) With this should be read rule 143: "In cases where there are joint appellants or joint respondents and error requiring a reversal or modification of the judgment below appears as respects one or more of said appellants or respondents, but not as respects all of them, the judgment may, in the discretion of the court, be affirmed as to the appellants or respondents not injured by such error."

The failure of the jury to return a verdict in favor of Joseph Saunders on his counter-claim against Rashti for property damage leaves that issue in the same position as if it had not been tried. *Sanford* v. *Totty Corp.,* 110 *N. J. L.* 262 (at *p.* 265). Hence a retrial of that issue is necessary.

Since the causes will be returned for a trial *de novo,* it is proper to consider one or two other grounds urged by the appellant, Harry Saunders, for the guidance of the trial court. The first is that the trial court erred in not allowing the appellant six peremptory challenges. This ground is not available to the defendant Rashti, since he took no exception whatever to the ruling by the trial judge, nor was any such reservation made in his rule to show cause.

On the drawing of the jury, before either of the defendants' counsel made any challenges, but apparently after the plaintiff's counsel had made one challenge, counsel for the separate defendants asked for a ruling by the court as to the number of peremptory challenges to which they were entitled. The court ruled that the plaintiff would be entitled to six challenges and all of the defendants together would be entitled to six challenges. The court said: "You are entitled

to six challenges as I understand the rule. How you divide them between the defendants is your problem." The following colloquy ensued:

"Mr. Backer (counsel for Saunders): It seems to me, on behalf of the defendants we represent, we are entitled to six challenges.

"The court: I don't think you are, as I understand the rule.

"Mr. Backer: Do I understand we are being limited to six between counsel for the defendants Saunders and counsel for the defendant Rashti?

"The court: Yes.

"Mr. Backer: May we have an exception to that?

"The court: Yes.

"(Jury selection continued.)

"Mr. Siracusa (of counsel for Saunders): Before the jury is sworn in and they leave the box, I don't know whether it is properly on the record, but in this case there are two distinct defendants with counter-claims as stated before. The rights of both Mr. Garrison and our office in representing these defendants are antagonistic, naturally so, because of the circumstances of the case, and I believe we have a right, under the law, to six challenges apiece, so far as the defendants are concerned.

"The court: Well, I have ruled on that question, Mr. Siracusa. I don't think that you are, as I understand.

"Mr. Siracusa: The ruling of the court is that we are limited to three?

"The court: Yes.

"Mr. Siracusa: And we are allowed an exception to that ruling.

"(The jury was then sworn.)"

We find six grounds of the Saunders' appeal are based on this judicial action; and for the reasons above stated we are expressing our view of the merit of these grounds of appeal, although apparently the exception was technically not well taken. While immediate objection was taken to the manner of selection of the jury, as was not done in *State* v.

*McNamara,* 116 *N. J. L.* 497, there is no proof in the record here that counsel for the defendants attempted to exercise any of the additional challenges to which they contend they were entitled. Nor is there any proof in the record that the defendants were dissatisfied with the jury as finally impanelled. The law presumes that every juror sworn in a case is indifferent and above legal exception, for otherwise he would be challenged for cause. *United States* v. *Marchant & Colson,* 25 *U. S.* 480, 482; 12 *Wheat.* 480. This presumption put a duty on the defendants here to show that they were dissatisfied with the jury as finally impanelled and that they would have exercised the right to additional peremptory challenges which they say was granted to them by the statute. The record is barren of any proof that the jury selected was not satisfactory to the defendants.

At common law there existed no right of peremptory challenges in civil actions. In this state the right to peremptory challenges in civil cases is given by *Pamph. L.* 1911, *p.* 220; *Cum. Supp. Comp. Stat., p.* 1651, 104-43, which provides:

"Upon the trial on any issue in a civil suit or action in any court in this state, each party shall be entitled to challenge peremptorily six of the general panel of jurors summoned and returned by the sheriff or other officer."

The appellants contend that the words "each party" in the statute mean that where the interests and claims of co-defendants are directly antagonistic each must be considered a distinct party within the purview of the statute. Clearly that is what the statute means; that where the interests and claims of the co-defendants are directly antagonistic or essentially different each defendant is entitled to the statutory number of challenges. 35 *C. J.* 409, § 468 (2). This is supported by abundant respectable judicial authority construing statutes similar in language to that here under consideration and we think it is the only rational and logical interpretation of the legislative intent and purpose. The trial court should, therefore, have allowed the defendant Rashti six peremptory challenges and the defendants Harry and Joseph Saunders six peremptory challenges between them, since their interests were not antagonistic one to the other.

It seems proper to add a few words touching the fact that while plaintiff had a verdict against both Saunders and Rashti, Saunders also had a verdict in a small amount on his counter-claim against Rashti, presumably for damage to the Saunders' car. It was argued on motions for a new trial, and is argued here, that this created a repugnancy in the verdicts which should have led to a new trial, and that the court abused its discretion in failing to grant such new trial. It is not necessary to pass definitely on this point, further than to say that while the trial court might well have set aside the verdicts on that ground, it is conceivable on the evidence that Rashti might have been negligent both as to plaintiff and Saunders, and Saunders nevertheless be not blameless as to the plaintiff. But for the reasons noted above, the judgments against both will be reversed, to the end that a *venire de novo* issue.

Rashti Case—

*For affirmance*—LLOYD, J. 1.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, PERSKIE, HETFIELD, DEAR, WELLS, RAFFERTY, JJ. 10.

The Chancellor, Mr. Justice Heher and Judges WolfsKeil and Cole concurring with the result, but not on the opinion.

Roberts Case—

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, PERSKIE, HETFIELD, DEAR, WELLS, RAFFERTY, JJ. 11.

The Chancellor, Mr. Justice Heher and Judges WolfsKeil and Cole concurring with the result, but not on the opinion.