CHRISTIAN HEUSER, PLAINTIFF-APPELLANT, v. HER-
BERT R. ROTHENBERG AND ARTHUR B. VAN BUS-
KIRK, DEFENDANTS-APPELLEES.

Submitted May 3, 1938—Decided September 13, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
HEHER.

For the plaintiff-appellant, *Heuser & Heuser* (*Ralph S.
Heuser,* of counsel).

For the defendants-appellees, *Lester C. Leonard.*

BROGAN, CHIEF JUSTICE. This negligence action arose out of a collision between two automobiles. The jury returned a verdict of no cause of action. The plaintiff had a rule to show cause why the verdict should not be set aside on the ground that it was against the weight of evidence; that it was the result of bias and prejudice; that it was "tainted" because of the misconduct and misbehavior of a juror. The alleged misbehavior arose out of the failure of any member of the jury to respond to an omnibus question asked by counsel for the plaintiff whether or not the jurors knew either of the defendants. The fact was later established that one of the jurors was quite friendly with one of the defendants. The trial court, after taking testimony on that feature of the case having to do with the failure of the juror to respond to the question mentioned, discharged the rule to show cause.

The appeal before us rests on the argument that the court abused its discretion in discharging the rule to show cause. The grounds of appeal are generally the same as those argued before the trial judge on the return of the rule.

1. The situation that arose in selecting the jury and which is now complained ·of may be described as follows: Counsel for both parties and the two defendants, personally, went to the jury room to select a jury. This was done outside the presence of the court. It is a manifestation of the unwise and imprudent practice of drawing a jury otherwise than in open court. Here no record was made of the questions propounded to jurors. The record before us is a sample of the laxity resulting from such practice and, in any event, selecting a jury in this fashion is not in accordance with the statute (*Rev. Stat.* 2:91-1) which prescribes that the names of the jurors shall be drawn from the box "publicly and in open court." Sometimes the practice is defended in the interest of economy of time. The time saved by drawing a jury in this manner is not well saved when serious error and injustice may result. However, no point is made on this score, both parties having participated in the selection of the jury in this manner, so we pass on to the consideration of the first point.

Plaintiff's counsel says that he asked the jury before they were sworn whether they "were acquainted or friendly with either of the defendants—Mr. Van Buskirk or Mr. Rothenberg. No one answered me * * *." Counsel argues that he was deceived by the silence of the jury and prevented thereby from perhaps exercising the right of peremptory challenge. In our view, counsel was not entitled to examine the jury in this general manner. It is true, of course, that either party may question any juror for the purpose of obtaining information to determine whether or not to interpose a peremptory challenge. Within the discretion and under the control of the court, such question shall be permitted for the purpose of disclosing whether or not the juror is impartial as between the parties *Rev. Stat.* 2:92-4. But, in our view, the statute authorizes counsel or party to examine jurors separately and not in the wholesale fashion exhibited here. "It does not authorize an omnibus examination of all of the twelve men whose names have been previously drawn from the general panel." *Boyd* v. *Husted, 3 N. J. Mis. R. 225, 227.*

While the question asked was not presented in the form contemplated and authorized by the statute, *supra,* we prefer not to decide this phase of the controversy on any such narrow ground and turn to the facts and the merits. The plaintiff proved in the testimony taken on the rule to show cause that Van Buskirk, one of the defendants, undoubtedly knew Mrs. Hyer (juror No. 3) very well and that a friendship existed between this defendant and Doctor and Mrs. Hyer; but it was also brought out on cross-examination that counsel for the plaintiff (a son of the plaintiff himself) likewise knew juror No. 3. When the other defendant, Rothenberg, was examined on this element of the matter, there was testimony that while the parties were in the jury room the defendant, Van Buskirk, said to Mr. Heuser, plaintiff's counsel, "Ralph, what about Emma?" (meaning Mrs. Hyer) and that Mr. Heuser said, "well, that is fifty-fifty," the inference being that plaintiff's counsel knew that Van Buskirk was a friend of Mrs. Hyer but that he, too, knew her. Van Buskirk again

took the stand and testified that after the jury was sworn, and the parties and counsel were going to the courtroom, plaintiff's counsel, Mr. Heuser, said, "I wonder how Emma is going to make out for you?" Van Buskirk also testified that Mr. Heuser said that he was satisfied with Mrs. Hyer's presence on the jury because a Dr. Gesswein, who, he said, was a friend of Dr. Hyer and practiced with him, was a witness for the plaintiff. Part of this testimony was denied by Mr. Heuser, who admitted, however, that he did say to Van Buskirk, before entering the court room, "I wonder what Mrs. Hyer will do, Dr. Gesswein is testifying in the case;" but he insists that he said that the doctors in question were competing doctors in the same community and not collaborators. In any event, he knew that the juror was Dr. Hyer's wife.

We have no way of knowing precisely what question was asked by counsel nor can we say that the juror in question, Mrs. Hyer, heard and understood the question since she was not examined individually, as she should have been under the statute, at the time the jury was selected. We are not impressed with the testimony of Mr. Heuser and think that it is fairly manifest that he was quite willing that Mrs. Hyer should remain on the jury, regardless of the fact that she knew the defendant Van Buskirk, since Mr. Heuser, who had his office in the Hyer neighborhood, also knew her and thought that the testimony of Dr. Gesswein, a friend or confrere or competitor, of Dr. Hyer, would be generally helpful under the circumstances. The trial court was of the opinion that Mr. Heuser was in the frame of mind of "gambling with the attitude of juror No. 3, in so far as his client was concerned," and that he likewise knew that Dr. Gesswein was to testify and was aware of whatever relationship there was between Dr. Gesswein and the husband of the juror in question and that he possessed enough information and facts to have excused the said juror unless he expected that she would impartially determine the issue. We do not think, under these facts and circumstances, that the court abused its discretion in refusing to order a new trial on this point.

2. On the other point in the case, did the evidence support

a verdict of no cause of action? We think it did. The trial court thought so and discharged the rule. This he was privileged to do in his sound discretion and it was not an abuse of discretion to do so. The fact that we would have acted differently on this point is not the criterion. The case was one for the jury and the jury determined the issue. The court, on the return of the rule to show cause, having had the benefit of hearing and observing the witnesses, thought the jury properly decided the issue. In going through the record, we would not have believed the defendants' testimony as to the speed of the car at the time the brakes were applied in an endeavor to avoid the accident, nor are we impressed with the testimony that a car moving at the rate of fifteen to twenty miles per hour skidded a distance of more than fifty feet and turned almost completely around in the process. But it is no abuse of discretion that the trial court should believe such evidence, as apparently he did.

The judgment is affirmed, with costs.