30 N.J. Super. 257 (1954)
104 A.2d 327
SPRINGDALE PARK, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN ANDRIOTIS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1954.
Decided April 1, 1954.
*260 Before Judges EASTWOOD, JAYNE and CLAPP.
Mr. John T. Madden argued the cause for the plaintiff-appellant (Mr. William Martin Cox, on the brief; Messrs. Dolan and Dolan, attorneys).
Mr. Willis H. Sherred argued the cause for the defendant-respondent (Messrs. Morris, Downing & Sherred, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The plaintiff-appellant (hereinafter referred to as "tenant"), and defendant-respondent (hereinafter referred to as "landlord"), entered into a written lease for premises consisting of two buildings, one a tavern and restaurant, and the other a dwelling house. One of the provisions of the lease required the landlord to keep the demised premises in good repair at all times during the term thereof.
The tenant instituted an action against the landlord in the Sussex County District Court to recover the sum expended by it in making certain repairs, alleging that the landlord had violated the covenant to repair, notwithstanding its demand for certain necessary interior repairs to be made.
The action was tried by the court and a jury, resulting in a divided jury verdict (10 to 2) of no cause of action. The tenant appealed from the ensuing judgment.
It is the tenant's contention that: (1) the verdict should be set aside and a new trial granted because it did not have a fair trial before an impartial jury; (2) the verdict was against the weight of the evidence; (3) the court erroneously admitted testimony as to certain repairs made by the landlord, other than those involved in the litigation; and (4), the court erred in admitting incompetent opinion evidence by an alleged expert.
In our opinion, the only question requiring any extensive discussion is that heretofore denominated as the first ground of appeal.
The tenant contends that when the jurors were interrogated as to whether they knew the parties or had any personal *261 knowledge of the subject matter of the suit, or whether there was any other reason why they might be subject to challenge, two jurors failed to disclose the fact that they had been members of a jury in a previous case between the same parties, involving the same covenant; that these two jurors voted in favor of the verdict returned in the case at bar; and another juror failed to disclose that her husband had also sat on the jury in the trial of the prior action.
The jurors were not examined separately on their voir dire, but the interrogation was made to them as a unit. To present the picture as it existed at the trial, we quote from the record the omnibus question submitted to the jurors and the colloquy connected therewith, viz.:
"MR. MADDEN: Ladies and gentlemen, this suit is a suit for an alleged violation of a covenant to repair. The suit is by the Springdale Park Corporation, which is a tenant of John Andriotis, and the tenant is suing the landlord, claiming that the landlord has violated his agreement to keep the premises in good repair. Are any of you familiar with the situation between these two parties with reference to these repairs? Does anybody have any personal knowledge of it? Have any of you any personal knowledge of the parties? I think you are all from around here, and I know that a good many of you know me, and you know Mr. Sherred, and probably know Mr. Andriotis, and perhaps know George Tsitsiragos, the president of the Springdale Park Corporation. Do any of you know the parties, either Mr. Andriotis or Mr. Tsitsiragos? Anyone at all? Mr. Kymer, you do? Do you feel that your knowledge of these parties is such as to prejudice your verdict that might be rendered in this case?
THE JUROR: No, I don't think so.
MR. MADDEN: In other words, you could decide it fairly according to the evidence, regardless of your personal knowledge?
THE JUROR: I do, sir.
MR. MADDEN: I assume some of you, without my knowing, may perhaps be clients of Morris, Downing and Sherred. Are any of you clients of theirs at the present time, or if you are would that influence you in your verdict at all? Would the fact that this relationship may exist between attorney and client, or is there any other reason whatever why any of you feel that you couldn't decide this case according to the evidence here, regardless of personal knowledge of parties or attorneys or otherwise? Is there any reason whatever? If there is, I wish you would so indicate now, since we would like to have the verdict rendered according to the evidence.
Satisfactory to us, your Honor.
MR. SHERRED: The defendant is satisfied. (The jury was thereupon duly sworn.)"
*262 The statute and the rule permitting an examination of a prospective juror as to his qualifications are N.J.S. 2A:78-4 and R.R. 4:48-1. N.J.S. 2A:78-4 provides:
"Upon the trial of any cause, civil or criminal, all parties may, within the discretion of the court, question any person summoned as a juror, after his name is drawn from the box and before he is sworn as a juror, and without the interposition of any challenge, to elicit information for the purpose of determining whether or not to interpose a peremptory challenge, and of disclosing whether or not there is cause for challenge. In all cases in which a death penalty may be imposed, the examination as to competency shall be under oath, but in other cases it shall be made without putting the juror under oath. Such questions shall be permitted for the purpose of disclosing whether or not the juror is qualified, impartial and without interest in the result of the action. The questioning shall be conducted under the supervision and control of the trial judge and in open court."
R.R. 4:48-1 provides:
"The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper."
Ballentine's Law Dictionary (2d ed. 1948), defines voir dire as follows:
"To speak the truth. The oath is so called which is administered to a prospective juryman or a witness as a preliminary step immediately prior to an examination of him relative to his qualifications as a juror or a witness."
See also, 31 Am. Jur., Jury, secs. 104, 107 and 108, pages 635, 636 and 638. That a party to litigation may examine into the qualifications, attitudes and inclinations of jurors, before they are impanelled and sworn to try a case, it being a necessary incident to the practice of challenging, is unquestioned. It is only by such an examination that the information or suspicion to constitute a basis for intelligent and practical exercise of challenges to accomplish the end desired  exclusions from the jury of those who would act *263 from prejudice or interest or without qualifications to judge soundly  may be discovered.
"The usual practice is to put those jurors who have been called, into the jury box, on their voir dire or oath to tell the truth, and then for counsel or the court to question them. Counsel challenges when he thinks that cause is apparent. The court either sustains the challenge, tells the challenged juror to step aside, and another juror is called, or the court overrules the challenge." 31 Am. Jur., Jury, sec. 104, p. 635.
It is the settled rule that for complete knowledge of all material and relevant matters essential to a fair and just exercise of the right to challenge either for cause or peremptorily, it becomes the duty of a juror to make full and truthful answers to such questions as are propounded to him. 31 Am. Jur., supra.
It seems clear that the general rule applicable to examination of jurors on their voir dire is that such examinations should be made of each juror individually and separately and not as a group. This conclusion is supported by our former Supreme Court in the case of Heuser v. Rothenberg, 121 N.J.L. 14 (1938), where Chief Justice Brogan, author of the opinion, stated:
"* * * But, in our view, the statute authorizes counsel or party to examine jurors separately and not in the wholesale fashion exhibited here. `It does not authorize an omnibus examination of all of the 12 men whose names have been previously drawn from the general panel.' Boyd v. Husted, 3 N.J. Misc. 225, 227."
In Boyd v. Husted, 3 N.J. Misc. 225 (Sup. Ct. 1925), it was stated at p. 227:
"* * * The right conferred by the statute is the questioning of a single juror, and this must be done separately, if the right is desired to be exercised with reference to more than one, for the purpose of eliciting from the member of the panel who is questioned the matters referred to in the statute. It does not authorize an omnibus examination of all of the 12 men whose names have been previously drawn from the general panel. For this reason, the ruling of the trial court was entirely proper."
*264 While the tenant argues that there are no New Jersey cases directly in point, he calls attention to the cases of Stephens v. State, 53 N.J.L. 245 (Sup. Ct. 1891), and the recent case of Panko v. Flintkote Co., 7 N.J. 55 (1951). It is to be observed that an examination of the two cases cited by the tenant, reveals that neither is apposite to the case sub judice. In the Stephens case, there was a specific challenge to a juror who had sat on a previous trial of the defendant and the challenge was sustained. In the Panko case, the issue of the qualifications of a juror was not involved, but was one which dealt solely with the subject of misconduct of one of the jurors.
In examining the omnibus question addressed to the jurors, it will be noted that actually there were nine questions in one; that that part of the question pertaining to knowledge of the issue between the parties, clearly was confined to the subject of the present action and there was no implication that it had any reference to the previous action between the parties. A repetition of that part of the question will clearly demonstrate this conclusion. It reads: "Are any of you familiar with the situation between these two parties with reference to these repairs? Does anybody have any personal knowledge of it?" It is undisputed that the subject of the prior action was entirely unrelated to the action at bar. With the exception of one juror, it is significant to note that counsel for the appellant never insisted upon a specific answer from the jurors in response to his omnibus question and seems to have been content with the silence of the jurors. However, we think that if counsel were desirous of obtaining answers to the congregated questions from the individual jurors, he should have specifically requested same. The one juror who indicated he knew the parties was not challenged, because he conveyed the assurance that his knowledge would not interfere with his impartial consideration of the evidence. Counsel for appellant contends that the silence of the other 11 jurors, and in particular the three jurors in question, misled him into accepting them. We think that the appellant's counsel created the situation about *265 which he now complains; that such a situation could have been readily avoided by requesting a specific answer from the jurors or, by an examination of each juror separately.
At all events, even if we were to assume that the three jurors misled the tenant in its efforts to ascertain their qualifications, the burden falls upon it to establish that it was harmed or prejudiced thereby. Vide Lindsley's Case, 46 N.J. Eq. 358 (Ch. 1890); De Mateo v. Perano, 80 N.J.L. 437 (E. & A. 1910). There is a complete dearth of proof that the jurors in question were guilty of any conduct indicating that their votes for the verdict returned were the result of bias or prejudice or that they were in any way influenced by their knowledge of the parties or the previous litigation. In fact, at the argument it was conceded that in the prior law suit a unanimous and favorable verdict was returned for the tenant, and that the two jurors in question and the husband of the other juror supported that verdict. Such a situation would not justify an implication that the jurors were in any way antagonistic to the tenant or in any way biased or prejudiced against it.
With respect to the tenant's contention that the court erroneously admitted evidence of repairs made by the landlord, other than those sued for by the tenant, our examination of the record discloses that the criticized testimony was admitted into evidence without any objection being made thereto by the tenant, except in one instance where the objection came after the question had been answered, in another instance the objection was sustained, and in the third the objection now made was to a question propounded by tenant's counsel himself to the witness. The tenant may not, on appeal, rely upon alleged inadmissible testimony as a ground for reversal when at the time of its introduction no objection was made thereto.
The tenant contends further that the court erroneously admitted testimony given by an alleged expert, and that such testimony was to the effect that when the work was finished the two buildings were in a proper state of repair and the repairs effected by the tenant were not required. In *266 the first place, no question of the qualifications of the witness, as a carpenter and contractor, was raised by the tenant. As a matter of fact, it conceded that he was qualified. Secondly, the appellant failed to interpose an objection to the two questions which brought the aforementioned responses. In addition, the tenant is not entitled to have this issue considered on appeal in view of the fact that in its appendix it did not include the question in "The Statement of the Questions Involved," which is a mandatory requirement of R.R. 1:7-1(c); 2:7-1. The pertinent portion of the rule provides:
"The brief of the appellant shall contain the following matter under distinctive titles, arranged in the following order: * * * (c) A statement of the questions involved, setting forth each question separately, in the briefest and most general terms, without names, dates, amounts or particulars of any kind. * * * The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved."
We find no merit in the contention that the verdict returned was against the weight of the evidence. Our examination of the record convinces us that the testimony of the respective parties was sharply controverted and the credibility of the witnesses with respect thereto was an important factual issue. Under such circumstances, it was clearly a factual issue to be determined solely by the jury and we see no justification for disturbing their verdict.
We find no merit in the other grounds of appeal.
Judgment affirmed.