CONSTANCE WRIGHT AND AUGUSTUS WRIGHT, JR., PLAINTIFFS-RESPONDENTS, v. SAMUEL BERNSTEIN AND WALBERN MANUFACTURING CO., DEFENDANTS-APPELLANTS.

Argued November 19, 1956—Decided January 28, 1957.

Mr. *Robert Shaw* argued the cause for the appellants (*Messrs. Shaw, Pindar, McElroy & Connell,* attorneys; *Mr. William T. McElroy* on the brief).

Mr. *Theodore D. Parsons* argued the cause for the respondents (*Messrs. Parsons, LaBrecque, Canzona & Combs,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment entered on a jury verdict in favor of the plaintiff-respondent Constance Wright in the sum of $75,000 for personal injuries and in favor of the plaintiff-respondent, her husband, in the sum of $7,000 for property damage to his automobile and *per quod*. We certified this appeal here on our own motion, *R. R.* 1:10–1(*a*).

The action was one in negligence and arose out of an automobile accident involving an intersectional collision when the car driven by the plaintiff-respondent Mrs. Wright, was struck by the car driven by the defendant-appellant Bernstein. Mrs. Wright received unusually severe injuries.

Since we have concluded that the judgment must be reversed because of infirmities in the manner in which the jury was impaneled, we find it unnecessary to detail the proofs as to the nature of the collision and the extent and severity of the injuries, although the argument is advanced on this appeal that the judgments are excessive and contrary to the weight of the evidence.

The trial below was commenced on May 21, 1956, on which day 12 persons were selected to fill the jury box and counsel for the plaintiff proceeded to interrogate each juror individually with respect to his or her occupation; Juror No. 6, Charles L. Shibla, stated he was an electronics engineer employed at the Signal Corps Laboratories at Fort Monmouth. Counsel then addressed general questions to this panel as to whether they would be prejudiced against a person who sued to recover damages for personal injuries, or whether or not they would be prejudiced by the fact that the plaintiff had been divorced from her first husband and then remarried; then followed a series of general questions as to whether any of the jurors had been represented by counsel or any member of his firm, or whether they were friends or related to any of the party litigants. Jurors Nos. 9 and 10 were excused by consent because they were personal friends of the plaintiffs. Each side used a number of peremptory challenges to excuse certain members of the panel;

then defense counsel addressed the following question to the panel:

"Mr. Pindar: Have any of you ever been involved or close members of your family been involved in an accident out of which lawsuit arose?"

Several jurors raised their hands, and counsel then interrogated Juror No. 6, Charles L. Shibla, as follows:

"Q. How about you? A. Oh, three or four years ago. My mother. Q. Seriously? A. She was not injured. It was property damage. Q. I see."

After one or two more excuses the selection of the jury was completed and it was sworn, and the court recessed until the next morning.

On Tuesday, May 22, 1956, when the court reconvened, it developed that Juror No. 5 had to be excused because of illness, and as a result of this a mistrial was declared, the entire jury discharged and returned to the jury room. The panel returned and a new jury was put in the box. Counsel noted that there were a number who had been selected or rejected from the jury impaneled and sworn the preceding day. Counsel for both parties, as well as the court, merely noted the fact, and those previously accepted remained and those excused were again excused.

Then counsel for the plaintiff directed the following questions to Shibla, who was now Juror No. 5:

"Q. Mr. Shibla, you are—well, you were accepted yesterday, weren't you? A. Yes, sir. Q. I thought I recognized your face, but I didn't get the name."

Mr. Parsons, counsel for the plaintiff questioned the jury generally as follows:

"Mr. Parsons: There are several of you members of the jury as you are now constituted to whom we addressed questions yesterday. Because there are new members I desire to ask you all if any of you have any answers to these questions will you please speak up, because

as the Court has indicated it's a case of importance to the plaintiffs and the Court has indicated an importance to the defendant. May I ask you, in the first place, as was indicated yesterday, and some of you sat, but to you new members sitting on this jury, have any of you any prejudice of any kind against a person who is injured in an automobile accident and then brings suit for the damages for the injuries they have sustained? If there is any latent prejudice I wish you would speak up so we could know. Then, I said yesterday, and I think, because I know people have occasionally some bias against it, but do any of you have any prejudice or would you have any prejudice against Mrs. Wright because some 13 or 14 years ago she divorced her husband?"

\* \* \* \* \* \* \* \*

"May I ask you if any of you have been sued in accident cases? And to save time Mr. Pindar will ask you if any of you have brought suit in accident cases? I believe you answered yesterday.

 Juror Number Seven (Thomas L. LaRare) :

Yes."

Thereafter counsel for the defense, Mr. Pindar, inquired:

"I think you just told Mr. Parsons none of you have been involved in accident cases, you or any close member of your family, is that correct?"

The entire panel, including Juror No. 5, Mr. Shibla, remained silent. The jury was finally drawn and sworn with Shibla a member as Juror No. 5.

The evidence of the plaintiff and defendant was presented on Tuesday, May 22, 1956, and on Wednesday, May 23, 1956; and the morning of May 24, 1956 was devoted to summation by counsel and the charge of the court. The jury then retired to commence their deliberations and a new case was called.

That case turned out to be the case of Olive P. Shibla v. Benjamin A. Crate, which involved a suit by Mrs. Shibla for personal injuries arising out of a fall in a store. At that time counsel for the defendants-appellants here, Mr. Pindar, was informed that the plaintiff, Olive P. Shibla, in the case then before the court was the mother of Juror No. 5, Charles L. Shibla, who had remained silent on his *voir dire* when he was asked whether he or any member of his family

had been involved in an accident case, and it appeared that his mother at the very time he was being examined on the *voir dire* was sitting in the court room.

Counsel for the defendants immediately made a motion for a mistrial, but because the transcript of the *voir dire* was not available the trial court reserved decision on this motion. The jury later returned with the verdict as above. On the very same day, in the case of Shibla v. Crate, counsel for the defendant Crate made a motion for a mistrial in that case which was granted by the court.

Subsequent to the entry of the judgment the defendants made a motion for a new trial on the ground that the verdict was excessive. This motion was returnable on June 8, 1956, on which day the motion for the mistrial was argued and denied.

Three days later the trial court sent for Mr. Shibla and interviewed him *in camera,* counsel for the respective parties not being present. Shibla's position was that he understood the question relating to accident as referring to an automobile accident and that it was not directed to accidents generally. He said, "But my mother's case didn't even enter my mind because it was plainly and purely an automobile accident that was being tried to me and it had no bearing whatsoever. It didn't even enter my mind, sir." Again he stated, "As far as this other accident stuff, to me it seems synonymous, automobile accident and accident, and that is the way I felt. * * * Accident to me in this case was an automobile accident." He then testified that on the first three polls of the jury he and another juror had voted in favor of the defendants on the ground the plaintiff had contributed to the accident, and for a considerable length of time he was dead set against any ruling in her favor, but that eventually he was persuaded to go along with the verdict.

The trial court denied the motion for a new trial on the ground the verdict was not the result of mistake, passion or prejudice, and he likewise denied the motion for a mistrial on the authority of *Springdale Park v. Andriotis*, 30 *N. J. Super.* 257 (*App. Div.* 1954), and said the defendant was

under the burden to establish he was harmed or prejudiced by what had happened; that there was a complete lack of proof that the juror in question was guilty of any conduct indicating that his vote for the verdict returned was in any way prejudiced or biased and that there was nothing except conjecture to establish such proposition. He said that even if the alleged fact the juror misled defense counsel in his efforts to ascertain their qualifications was true, that alone would not require a new trial and the defendant still had the burden of establishing that he was harmed.

█ The appellant argues that the trial court erred in denying the motion for a mistrial. Our Constitution guarantees that the right of trial by jury shall remain inviolate, *Art.* I, *par.* 9, and the right to peremptory challenge is an incident of that trial. While at common law there existed no right of peremptory challenge in civil actions, in this State the right to peremptory challenges in civil actions was given by *L.* 1911, *c.* 151, *p.* 222, now *N. J. S.* 2*A*:78–7; *Roberts v. Saunders,* 118 *N. J. L.* 548, 554 (*E. & A.* 1937). This right of challenge is further implemented by *N. J. S.* 2*A*:78–4 which, *inter alia,* provides that on the trial of any cause, civil or criminal, all parties may interrogate a person summoned as a juror before he is sworn, to elicit information for the purpose of "determining whether or not to interpose a peremptory challenge, and of disclosing whether or not there is cause for challenge." *R. R.* 4:48–1 seeks to accomplish the same end by stating by whom and in what manner the examination shall be conducted.

█ The right to a peremptory challenge granted by the statute does not require that the questioning should establish a sufficient ground for a challenge for cause. The eligibility of a particular juror in such a situation is a decision of counsel and not of the court. *Pleva v. Gootzeit,* 114 *N. J. L.* 399 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 505 (*E. & A.* 1935). Thus a peremptory challenge can rest on a good reason, a bad reason, or no reason at all. The right of challenge, particularly the right of peremptory challenge, has been recognized in this State as a right of rejection, rather

294

than of selection. *State v. Deliso,* 75 *N. J. L.* 808, 811 (*E. & A.* 1908); *State v. Langhans,* 95 *N. J. L.* 213, 216 (*E. & A.* 1920).

█ Once the jury is sworn, however, the law presumes that every juror in a case is indifferent and above legal exception, or otherwise he would have been challenged for cause. This presumption puts a duty on a party to show that they were or would have been dissatisfied with the jury as finally impaneled, and that they would have exercised the right of additional peremptory challenges given them by statute if they were aware of the true situation. *Roberts v. Saunders, supra.*

The appellant argues the misleading and deceptive information here relied on was properly elicited in an authorized proceeding conducted before the court, under its direction and by virtue of its authority, and appellant had the right to rely upon the answer given as one given fully and truthfully; that in the instant matter the juror in question was individually interrogated and the questions addressed to him were simple in nature and clear in import, which was not the case in *State v. Grillo,* 16 *N. J.* 103 (1954); *Olivo v. Strand Engineering, Inc.,* 30 *N. J. Super.* 544 (*App. Div.* 1954); *Springdale Park v. Andriotis, supra.*

█ The misconduct here complained of is not a failure to answer a question improperly presented and unclear in nature, but rather that the answer given by design or otherwise was deceptive and misleading. As we see it, there can be no doubt had the prospective juror answered the inquiry truthfully, he would have been peremptorily challenged, if the court overruled a challenge for cause. Therefore, the question is whether the right of challenge was denied by the prospective juror's failure to disclose the information sought pertinent and necessary to the decision of counsel. On the question of challenge it is the prospective juror's state of mind with relation to the issue to be tried, and his predilections, that were relevant to the inquiry of fitness.

██ The fundamental right of trial by a fair and impartial jury is jealously guarded by the courts. The jury is

an integral part of the court for the administration of justice, and on elementary principles its verdict must be obedient to the court's charge based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The parties to the action are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influences. *Panko v. Flintkote Co.*, 7 *N. J.* 55, 61 (1951).

 What happened in this case had the effect of nullifying the purpose of the examination and was as effective as though the trial court had denied the right of challenge. The denial of the right of peremptory challenge is the denial of a substantial right. When it is not waived by conduct, it is prejudicial *per se* and harmful, and a party is not required to make an affirmative showing that the denial of his right to peremptory challenge had resulted in prejudice and injury to his cause of action on the merits.

 The test in such a situation where there is an intrusion of irregular influences into the trial is not whether the irregular matter actually influenced the result, but whether it had the capacity for doing so. The stringency of the rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. *Panko v. Flintkote Co., supra.*

 The argument that the particular juror acted fairly in weighing the evidence in this case is immaterial. In *Schulinsky v. Boston & Maine Railroad,* 83 *N. H.* 86, 139 *A.* 189, 191 (*Sup. Ct.* 1927) the court said:

"Argument that a finding that the trial was fair is not pertinent. The question is whether a proper tribunal was established, and not whether an improperly established tribunal acted fairly. If the jury is an unauthorized or unfairly established tribunal, the party whose right of challenge is impaired is not required to submit to its verdict. He has not had such a jury trial as the law provides."

The good faith of the juror in answering is likewise not a factor to be considered. The harm lies in the falsity of the information regardless of knowledge of its falsity on the

part of the juror. *Schulinsky v. Boston & Maine Railroad, supra;* 36 *Mich. L. Rev.* 1020, 1023 (1938).

While there is authority to the contrary that to justify a new trial it must appear that the party seeking it has been prejudiced by the false answers of the juror, 38 *A. L. R. 2d* 624, 627 (1954), most of the situations are clearly distinguishable from the one here presented.

■ We find that the trial court was in error when it failed to grant a mistrial immediately on application to it in the trial of this cause, and that this error was harmful to the appellants' right to a jury trial and all the fundamental incidents thereof, including the right of peremptory challenge.

■ The motion for a mistrial is addressed to the sound discretion of the court, but the power to grant such motion should be exercised with the greatest of caution. However, when the error or irregularity complained of patently fails to take into account the substance of a fundamental right of a party and deprives the party of the essence of such right, in a way that is plainly ineradicable either by an instruction or other action by the court subsequent to the motion for the mistrial, a mistrial must be granted as a matter of right. *State v. Witte,* 13 *N. J.* 598, 611 (1953). A denial of a mistrial in such a situation would be a mistaken exercise of judicial discretion, *cf. Hager v. Weber,* 7 *N. J.* 201, 212 (1951), and hence harmful error since such action by the court would clearly and unequivocally be a manifest denial of justice under the law. *Hartpence v. Grouleff,* 15 *N. J.* 545, 549 (1954).

It is essential to the future operation of the jury system that a juror in the situation in which Shibla found himself should not serve or be allowed to serve on a jury panel, and the mistrial should have been granted as a safeguard to or vindication of the fundamental principle that the administration of justice be kept free of all suspicion of corrupting practices or extraneous influences. The irregularity was not procedural but fundamental. *Meszaros v. Gransamer,* 23 *N. J.* 179 (1957).

 We disapprove of the procedure pursued by the trial court in interrogating the juror Shibla. No juror should be questioned by the court in regard to his conduct either within or without the jury room in the absence of counsel.

The judgment is reversed and the cause is remanded for a new trial. No costs.

JACOBS, J., joined by BURLING, J. (dissenting). Our courts may no longer view judicial trials simply as contests to be played strictly according to rules and they may no longer direct new trials for harmless procedural violations. In civil cases they are now governed by the modern concept embodied in *R. R.* 1:5–3(*b*) which unequivocally provides that a new trial may not be granted unless denial of the application therefor "appears to the court to be inconsistent with substantial justice." However, as *Meszaros v. Gransamer*, 23 *N. J.* 179 (1957), points out and as the result reached by the majority vividly illustrates, *R. R.* 1:5–3(*b*) may become meaningless if it is implemented by a narrow or hostile judicial approach. It seems to me that fair regard for *R. R.* 1:5–3(*b*) and its enlightened test of substantial justice dictates affirmance of the judgment entered below.

When originally interrogated, the prospective jurors were told that the case involved an "automobile accident" in which the plaintiff Constance Wright suffered injuries, and when counsel for the defendants inquired whether any jurors or close family members had been "involved in an accident out of which lawsuit arose" five jurors, including Mr. Shibla, raised their hands—they were later joined by a sixth juror. Mr. Shibla stated that his mother had a matter "three or four years ago" but "she was not injured. It was property damage." He evidently thought that the question was confined to automobile accident cases and he did not mention that his mother had a pending case for personal injuries resulting from a fall on a slippery floor in a shoe store. One of the other jurors stated that his brother had a case against a railroad for a broken foot and that it had not yet been settled; two of the jurors stated that they had matters which were no longer pending; and the remaining two jurors were

not asked any questions at all about the matter despite the fact that the court specifically pointed out to counsel that they had raised their hands. None of the jurors was challenged or excused because of any suggested connection with other lawsuits. After the discharge of the first jury and the selection of a new jury, which also included Mr. Shibla, there was omnibus questioning (as indicated in the majority opinion) which brought no response from any of the jurors. See *State v. Grillo,* 16 *N. J.* 103 (1954).

The jury duly returned its verdict for the plaintiffs; it was unanimous, though five-sixths would have sufficed. See *N. J. S.* 2*A* :80–2. Later, Mr. Shibla was interrogated by the trial judge. He explained that the introductory remarks of counsel related to an automobile accident case and it seemed to him that "automobile accident and accident were used synonymously"; that his mother's case against the storekeeper had not entered his mind; that he and one other juror had voted for the defendants on the first two or three polls; and that although he was dead set against a plaintiffs' verdict for a while, he eventually went along. The trial judge found that Mr. Shibla had a "straightforward attitude" and sincerely believed that "the questions were directed to automobile accident cases only." Although not called to be present when the trial judge interrogated Mr. Shibla, counsel for the defendants, at oral argument, expressly disavowed any suggestion that Mr. Shibla had intentionally misled him. Nor did he at any time take any steps to establish that there was any bias or harm, or that Mr. Shibla's report as to his participation in the jury's deliberations and particularly as to how the voting actually went in the jury room was not in every respect accurate. See *State v. Kociolek,* 20 *N. J.* 92 (1955). Instead, his position has been that since the literal falsity of Mr. Shibla's answer may have led him into not exercising a peremptory challenge there was prejudicial error *per se.* This contention is not only in direct opposition to the very terms and purposes of *R. R.* 1 :5–3 (*b*) but seems

to be in conflict with the great weight of authority throughout the country. See *Springdale Park v. Andriotis, 30 N. J. Super. 257, 265 (App. Div. 1954); Maher v. New York, C. & St. L. R. Co., 290 Ill. App. 267, 8 N. E. 2d 512 (1937); Pearson v. Gardner Cartage Co., 148 Ohio St. 425, 76 N. E. 2d 67 (1947); O'Brien v. Vandalia Bus Lines, 351 Mo. 500, 173 S. W. 2d 76 (1943).* See also *Annotation, "Effect of juror's false or erroneous answer on voir dire in personal injury or death action as to previous claims or actions for damages by himself or his family," 38 A. L. R. 2d 624* (1954), where many of the cases are collected and summarized:

"It is generally recognized that a false answer on *voir dire* which has the effect of depriving counsel of the opportunity to make a proper determination of whether to exercise the right to challenge a juror will not in itself require the granting of a new trial. The courts are almost all agreed that to justify a new trial it must appear that the party seeking it has been prejudiced in his case by the false answers." 38 *A. L. R.* 2d, at *page* 627.

In *Maher v. New York, C. & St. L. R. Co., supra* [290 *Ill. App.* 267, 8 *N. E.* 2d 515], the court declined to upset a verdict where a juror had misstated that no member of his family had been involved in personal injury cases; in the course of its opinion it said:

"In the instant case, as in all cases, 'the rule of reason' must constantly be kept in mind. Judgments are not reversed for every error that appears in the record. If this were so, few, if any, would be permitted to stand. But we think the true test in the case at bar is not whether the prospective juror answered truthfully and fully the questions put to him, but, has the petitioner been prejudiced in the case? *Swan v. Boston Store,* 191 *Ill. App.* 84; *Pienta v. Chicago City Ry. Co.,* 208 *Ill. App.* 309; *Edwall v. Chicago R. I. & P. Ry. Co.,* 208 *Ill. App.* 489; *Raub v. Carpenter,* 187 *U. S.* 159, 23 *S. Ct.* 72, 47 *L. Ed.* 119; *U. S. v. Rosenstein,* 2 *Cir.,* 34 *F.* (2d) 630; *O'Brien v. Gen. Accident, etc., Corp.,* 8 *Cir.,* 42 *F.* (2d) 48; *James v. State,* 68 *Ark.* 464, 60 *S. W.* 29; *State v. Cleary,* 40 *Kan.* 287, 19 *P.* 776; *State v. Brown,* 114 *Kan.* 452, 219 *P.* 279; *Schmidt v. Rose,* 6 *Mo. App.* 579; *Hayes v. Thompson, N. Y.,* 15 *Abb. Prac., N. S.,* 220; *Burden v. Stephens,* 174 *Okl.* 312,

49 P. (2d) 1098; *Suggs v. State,* 46 *Okl. Cr.* 340, 285 *P.* 985; *Sansouver v. Glenlyon Dye Works,* 28 *R. I.* 539, 68 *A.* 545; *Leeper v. State,* 29 *Tex. App.* 63, 14 *S. W.* 398; *Goad v. State,* 106 *Tenn.* 175, 61 *S. W.* 79; *Beck v. Thompson,* 31 *W. Va.* 459, 7 *S. E.* 447, 13 *Am. St. Rep.* 870."

The uncontroverted circumstances establish that Mr. Shibla's statement, though inadvertently inaccurate, was not actually harmful or prejudicial and in nowise impaired the complete fairness of the trial nor the justness of the verdict. If the controlling test of substantial justice is to have any significant meaning, then the course which should be taken in the instant matter seems reasonably clear. See *Meszaros v. Gransamer, supra:*

"Throughout history the ever present goal has been to attain a better system of justice which affords to every person a fair, inexpensive and speedy trial, unshackled by needless technicality and formalism. This goal is frustrated by every new trial for a procedural error which did not impair the fairness of the first trial nor the justness of the original verdict. In this day there should be ready recognition of the absence of justification for such new trial except in the unusual instance where it is really essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle. It will not suffice that we have solemnly set forth in a formal practice rule (*R. R.* 1:5–3(b)) that a new trial will not be granted 'unless a denial of the relief sought appears to the court to be inconsistent with substantial justice'; as Professor Sunderland properly pointed out almost 30 years ago, we must go further and always interpret and apply the rule with sympathetic understanding that trial procedure is not the end in itself but is merely the vehicle for attaining justice:

'The problem of prejudicial error is a problem in professional psychology. No rules can be framed which will solve it, for rules can only be drawn in general terms, and it is in the interpretation of the rules that the difficulty comes * * * The only permanent and effective cure for technicality in this respect is a better conception of the purpose of all procedure. In England in the year 1924 not a single case from the King's Bench Division was reversed for error in admitting or excluding evidence. That simple fact explains why the intricacies of practice no longer annoy the English lawyer. And it explains the success of the whole judicial establishment. Procedure has become a practical means to an end. Its rules are no more exacting than efficiency requires. * * * Every judgment which is reversed merely because obtained contrary to rules, shows a failure of the courts to serve the main purpose of

their existence.' *Sunderland, 'The Problem of Appellate Review,'* 5 *Texas L. Rev.* 126, 146 (1927), as quoted in 7 *Moore, supra,* at 1002."

I would affirm.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and WEINTRAUB—5.

*For affirmance*—Justices BURLING and JACOBS—2.