249 N.J. Super. 253 (1991)
592 A.2d 294
JOAN CATANDO AND FRANK CATANDO, PLAINTIFFS-APPELLANTS,
v.
SHERATON POSTE INN AND RCA CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1991.
Decided June 27, 1991.
*256 Before Judges KING, LONG and R.S. COHEN.
Michael A. Ferrara, Jr. argued the cause for appellants (Ferrara and Waldman, attorneys, Marian C. Amann on the brief).
Gregory J. Sutton argued the cause for respondent Sheraton Poste Inn (LaBrum and Doak, attorneys, Gregory J. Sutton on the brief).
Charles J. Connery argued the cause for respondent RCA Corporation (Kenney & Kearney, attorneys, Charles J. Connery on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
Plaintiff Joan Catando was a business visitor at the Sheraton Poste Inn. After parking her car, she walked by a direct route through the parking lot to the entrance of the Inn. As she approached the entrance, her foot caught and she fell. Looking back as she lay on the ground, she saw that there was a cable running across the surface of the parking lot, encased in a metal channel and secured to the macadam with grey duct tape. In the area of her fall, plaintiff saw that a short length of the cable had come out of the channel. It was impossible to say if it was the result of her hitting the channel with her foot, or if it was already out, and, perhaps, caused her fall. The channel, according to plaintiff, was about an inch high and somewhat wider. A short length of it was put in evidence, but we have not seen it.
Plaintiff sued Sheraton Poste Inn and also RCA Corporation. The cable was part of a temporary installation made by RCA of an earth satellite dish antenna in the parking lot. The purpose was to provide television antenna services to the Inn, and that *257 required a cable to be run from the antenna to the building. It was installed by RCA, with the Inn's approval, across the parking lot surface in the raised channel. The case was tried on liability only. The jury found that both defendants were free of negligence and that plaintiff had negligently caused her own injuries. Plaintiffs appealed; we affirm.
Plaintiffs first challenge the exclusion of expert testimony offered by plaintiffs on the issue of liability. The reason for exclusion was that plaintiffs supplied the expert's name and report on the day first set for trial. Counsel had engaged the expert some time before, and he had inspected the premises. The case seemed insufficiently weighty to counsel, however, to invest in a report and testimony until plaintiff's injuries turned out to be more serious than expected. Counsel's explanation raises more questions than it answers. When did the injuries look more serious? When did counsel decide to use the expert, and why did he not immediately advise his adversaries? Was it a coincidence that the expert's report was dated the first trial date? After the trial date passed and a new date was set, and counsel knew that defendants objected to his late move, why did he not seek some relief from the court, instead of saving the problem for a brinkman's solution at trial?
It is an important judicial goal to see that a case is presented, fairly to the litigants, in a way that makes the merits most readily accessible to the jury. There are circumstances, however, that justify burdening a party with the attorney's tactical decisions. Making a last-minute decision to call an expert mandates notice to the court and counsel when the decision is made, so that a fair remedy can be sought for the potential disruption in the scheduled pace of litigation. Saving such surprises for trial can be unfair to court and counsel, and is sometimes intended to be. It was unfair here, and the trial judge's response was well within the broad range of judgment entrusted to him in such matters. Westphal v. Guarino, 163 *258 N.J. Super. 139, 145-146, 394 A.2d 377 (App.Div.), aff'd o.b., 78 N.J. 308, 394 A.2d 354 (1978).
Plaintiff next complains that the trial judge declined to charge the content of certain regulations relating to the obligations of hotel-keepers for safety in and around the property. N.J.A.C. 5:10-6.1 et seq. The regulations do not say anything significantly different from the detailed instructions that were given to the jury on the Inn's common-law responsibilities. The jury was not deprived of any information that would have aided the decision-making process.
Plaintiffs also complain that the jury was erroneously instructed that they had to prove defendants had actual or constructive notice of the condition. They made no such objection at trial. Reading the jury instructions as a whole, we are satisfied that they did not convey to the jury that either RCA or the Inn could sit passively without liability for a dangerous condition unless it was somehow brought to their attention. Instead, we believe the jury was correctly advised that RCA was liable for a dangerous condition if it created one, and that the Inn had the active responsibility to safeguard its patrons, to guard them or warn them of dangers, and to seek out conditions needing attention.
There is one ruling challenged by plaintiffs that deserves extended discussion. It was the seating, over plaintiffs' objection, of a juror who had exhibited disqualifying bias against plaintiffs.
We start with the traditional and sound rule that trial court decisions whether to excuse prospective jurors for cause are given substantial deference. They are discretionary decisions which engage the trial judge's superior ability to evaluate the whole person in the courtroom. State v. Marshall, 123 N.J. 1, 85-87, 586 A.2d 85 (1991); State v. Singletary, 80 N.J. 55, 64, 402 A.2d 203 (1979). The other side of the coin, however, is that securing and preserving an impartial jury goes to the very *259 essence of a fair trial. State v. Williams, 93 N.J. 39, 60, 459 A.2d 641 (1983). The reported cases on the subject are mostly criminal cases, because allegations of jury bias more often appear there, and the consequences of bias are so dire. A civil litigant is also entitled to an unbiased jury, however, and to responsive jury selection processes. The right to be tried by a fair and impartial jury is a fundamental one, to be jealously guarded. Wright v. Bernstein, 23 N.J. 284, 294-295, 129 A.2d 19 (1957); State v. Singletary, supra, 80 N.J. at 68-71, 402 A.2d 203 (Clifford, J., dissenting), 71-83, 402 A.2d 203 (Handler, J., dissenting).
We repeat the questions and answers relating to Juror # 5, the one we hold should have been excused for cause:
THE COURT: Is there anyone who has been a plaintiff or a defendant in civil litigation? The plaintiff is the party who brings the action, the defendant is the one who has been charged with some particular 
JUROR NO. 5: The nature of my business, I have civil suits pending constantly.
THE COURT: And what is the nature of your business?
JUROR NO. 5: I have a new car automobile dealership.
THE COURT: I understand. Okay.
Voir dire questioning of the panel then went on to other matters, and returned to Juror # 5 a few minutes later:
THE COURT: Is there anyone presently seated who has a cause of action pending in this state or any other state? And if so, please raise your hand. Civil cause of action. Mr. [Juror # 5]?
JUROR NO. 5: I have somebody who's suing us for a break-in that occurred at our premises, on bailment.
THE COURT: Bailment, all right. Anyone else? Anything pending? If so, please raise your hands.
The questioning again went on to other topics, but later returned to Juror # 5's experiences:
THE COURT: Is there anyone presently seated who has anything against plaintiffs? In other words, those are the parties who bring causes of actions in the civil law for money damages. Mr. [Juror # 5]?
JUROR NO. 5: Again, the nature of my business, a lot of times people sue me for no apparent reason.
THE COURT: Recognizing that that does happen, I don't know how frequently, and also recognizing that citizens have an absolute right to bring a cause of action if they think they have been harmed, do you think because of your *260 business, the nature of your business, that you would hold that against these parties?
JUROR NO. 5: Recently I've lost some cases where I've had no reason to lose.
THE COURT: Well, that's  everybody is here at that same risk, so my question is  you have lost cases which you felt you should not have lost. Everybody will come out that way. That's one thing about litigation, somebody is always right and somebody is always wrong, depending upon how the jury decides, but the real question is, as the record indicates, you do not know the plaintiff, Ms. Catando, or the defendants?
JUROR NO. 5: No, I do not.
THE COURT: But would you, even though you do not know them, hold your experiences against them in deciding this case?
JUROR NO. 5: I don't think so.
THE COURT: All right.
Plaintiffs' counsel challenged Juror # 5 for cause on the basis of his answers to the judge's questions. The judge ruled:
With respect to Juror No. 5, it is the opinion of the Court that the juror answered the Court's questions quite honestly and did state that he felt that there was quite a bit of litigation that was unwarranted, and because of that mind-set, the Court probed a little further to ascertain whether or not that mind-set would carry over to these litigants.
He assured the Court by his statement that he could be fair to these parties, irrespective of his experience with people in his business. Therefore, I think there is an absence of showing of cause for his dismissal from the jury, so the objection will be overruled.
Plaintiffs exercised one of their peremptory challenges to excuse Juror No. 5. They thereafter exercised all of their other peremptory challenges.[1] They made no other disputed challenges for cause.
We disagree with the trial judge as to the significance of the juror's responses. He said he had civil suits pending constantly as the result of the nature of his new car business. There was someone who was currently suing on a bailment as the result of a break-in at the dealership. When the panel was asked if *261 anyone had anything against plaintiffs, Juror No. 5 again responded, this time clarifying that he felt that "a lot of times people sue [him] for no apparent reason". Even after the judge lectured Juror No. 5 about citizens' absolute right to sue, and asked him again if he would hold his experience against these plaintiffs, he replied, "[r]ecently I've lost some cases where I've had no reason to lose." The juror's response was not a flat and direct yes, but it was clearly meant to be an explanation why he might hold his experience against these plaintiffs. Only after the judge again lectured the juror and put to him the obviously disapproving question, "[b]ut would you, even though you do not know them, hold your experiences against them in deciding this case?", did the juror muster the unresounding "I don't think so."
It is one thing to accept a juror with a potential disqualification who repeatedly insists that he or she can sit fairly and impartially. See State v. Hunt, 115 N.J. 330, 350, 558 A.2d 1259 (1989). It is quite another to accept a juror who repeatedly expresses doubts about his own ability to sit unaffected by his perceived experiences as the frequent victim of groundless suits for money. The final "I don't think so" did not solve the problem. Everyone wants to be thought of as fair and open-minded, but it does not dissipate feelings of bias for the judge to suggest by his questions how unworthy of good citizenship such feelings might be. Early answers from prospective jurors may have a spontaneous accuracy that later, judicially channelled answers may lack. Longshore v. Fronrath Chevrolet, Inc., 527 So.2d 922, 923-924 (Fla. Dist. Ct. App. 1988); Lambert v. Sisters of St. Joseph of Peace, 277 Or. 223, 560 P.2d 262, 266 (1977); Moore v. Middlewest Freightways, Inc., 266 S.W.2d 578, 586 (Mo. 1954).
A juror must not only be impartial, unprejudiced and free from improper influences, Wright v. Bernstein, 23 N.J. 284, 294-295, 129 A.2d 19 (1957), he or she must also appear to be so. The litigants' confidence in the basic fairness of the trial *262 is an important consideration. State v. Jackson, 43 N.J. 148, 160-161, 203 A.2d 1 (1964), cert. denied, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965). If a party's reasonable apprehension of unfairness can be avoided without injuring the rights of others, a sound exercise of judgment favors excusing a juror. See Glasgow v. Metropolitan Street Ry. Co., 191 Mo. 347, 89 S.W. 915, 917 (1905). As the Michigan Supreme Court recently put it:
There are simply too many unbiased and otherwise qualified individuals eligible to sit on any given jury to quibble over persons who have voluntarily articulated a grave potential for bias.
Poet v. Traverse City Osteopathic Hosp., 433 Mich. 228, 238, 445 N.W.2d 115, 120 (1989); see also Blades v. DaFoe, 704 P.2d 317, 324-325 (Colo. 1985).
After the judge refused to excuse the juror for cause, plaintiffs exercised one of their peremptory challenges to remove him. Thereafter, jury selection proceeded uneventfully. Plaintiffs exhausted their peremptory challenges, and the clerk announced to the judge that the jury was satisfactory. Presumably, he made the announcement on behalf of all counsel. Plaintiffs did not indicate in any way that any of the jurors who were ultimately sworn were objectionable in any way. They did not ask for an additional peremptory challenge.
If this were a criminal case, the erroneous denial of a challenge to a juror for cause might well be the basis for reversal of a conviction, if the challenged juror was ultimately excused peremptorily and defendant was thus deprived of a peremptory challenge, and without any showing of other prejudice. See State v. Williams, 113 N.J. 393, 442-445, 550 A.2d 1172 (1988); State v. Pereira, 202 N.J. Super. 434, 438-439, 495 A.2d 431 (App.Div. 1985). But see Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (Loss of a peremptory challenge used after court's erroneous failure to excuse a juror for cause is not a violation of the federal constitutional right to an impartial jury). Civil cases have historically been treated *263 differently. We are aware of no New Jersey precedents,[2] but other jurisdictions have considered the problem.
In Poet v. Traverse City Osteopathic Hosp., 433 Mich. 228, 445 N.W.2d 115 (1989), the Michigan Supreme Court adopted a sound test to deal with the problem. In that case, a person should have been excluded for cause from a civil jury. The judge declined to excuse the juror, and plaintiffs therefore used a peremptory challenge to excuse him. Plaintiffs thereafter exhausted their peremptory challenges before a second problem juror was seated. Although perhaps not excludible for cause, the second juror was clearly a person to whom plaintiffs had serious objections. Plaintiffs vigorously expressed those objections but were afforded no relief by the trial judge. The juror remained on the jury and participated in reaching the no-cause verdict against plaintiffs.
In reversing, the Michigan Supreme Court adopted a four-part test which, it held, plaintiffs satisfied:
[T]here must be some clear and independent showing on the record that: (1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable.
Id. at 240-241, 445 N.W.2d at 121. The Court made it clear in an accompanying footnote that an "objectionable" juror is not necessarily one who is excusable for cause, but is one to whom, for particular, articulated reasons which are more than trivial, the party objects.
The Michigan rule seems to be followed also in Florida, Longshore v. Fronrath Chevrolet, Inc., 527 So.2d 922 (Fla. Dist. Ct. App. 1988), Texas, Physicians and Surgeons Gen. Hosp. v. Koblizek, 752 S.W.2d 657 (Tex. Ct. App. 1988), and perhaps Arkansas. National Bank of Commerce v. H.C.A. *264 Health Serv. of Midwest, Inc., 304 Ark. 55, 800 S.W.2d 694, 698-699 (1990). Oklahoma requires even a criminal defendant to show that he not only exhausted all peremptory challenges, but that "an incompetent juror was forced upon him." Ferrell v. State, 475 P.2d 825, 828 (Okla. Crim. App. 1970). Other states have taken the position that it is reversible error to deprive a civil litigant of a peremptory challenge by forcing its use to challenge a juror whom the court should have excused for cause. See Poet v. Traverse City Osteopathic Hosp., supra, 433 Mich. at 239-241, 445 N.W.2d at 120-121 (citing authorities to that effect from Arizona, Colorado, Indiana, Iowa and Utah). Their approach is best expressed in Blades v. DaFoe, 704 P.2d 317, 325 (Colo. 1985):
[T]he right to exercise peremptory challenges is a substantial right and was not intended as a remedy for trial court errors.
Exhaustion of peremptory challenges was held to be sufficient in Miles v. F.E.R.M. Enterprises, 29 Wash. App. 61, 627 P.2d 564 (1981), but not in Caruso v. Local Union No. 690, 107 Wash.2d 524, 730 P.2d 1299, cert. denied, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), which required a showing of prejudice.
Michigan's is the better rule. If the jury that ultimately decides a civil case is itself an impartial and qualified one, containing no objectionable members, the erroneous denial of an excusal for cause and the resulting deprivation of a peremptory challenge should not invalidate the jury's verdict. On the other hand, requiring a showing of undefined prejudice is unfair because prejudice beyond the composition of the jury is not ordinarily demonstrable. But if a party can show that the result of wasting a peremptory challenge on a juror the court should have excused for cause was the seating of an objectionable juror, that should be sufficient for reversal.
We thus adopt the following rule in civil cases, if a challenge for cause is erroneously denied but the party does not use an available peremptory challenge to excuse the juror, the error is harmless; if all peremptory challenges have already *265 been exhausted, and the challenged juror therefore sits, the error requires reversal; if the party unsuccessfully challenging the juror for cause thereafter uses a peremptory challenge to excuse him, exhausts all peremptory challenges, and makes a clear showing on the record of a desire to excuse another, subsequently summoned juror, and that that juror was objectionable, that is, one to whom the party objects for particular, more than trivial, articulated reasons, the erroneous denial of the excuse for cause becomes reversible error.
The objectionable juror need not be one who is excusable for cause. If he were, then the failure to excuse him is itself erroneous. The described showing must be made on the record of the jury selection itself. There are two reasons. First, prompt raising of the problem, while the judge still has the capacity to deal with it, insures that avoidable error does not inadvertently creep in to the proceedings. The second reason is to avoid later disputes over the question of what objections were actually brought to the court's attention.
Here, plaintiffs' counsel made adequate objection to the one juror whom he ultimately excused peremptorily. No subsequently seated juror was the subject of any objection or even comment. In these circumstances, the denial of the challenge for cause was harmless and not reversible error.
Affirmed.
NOTES
[1] The transcript of the jury selection does not show whose peremptory challenges are being exercised. The clerk announces to the juror that he or she is excused, apparently on some signal from the judge or counsel. We were therefore unable to tell from the record if plaintiffs exhausted their peremptory challenges. At oral argument, counsel represented to us, without dissent from his adversaries, that he had indeed exercised all of his challenges.
[2] In Wright v. Bernstein, 23 N.J. 284, 129 A.2d 19 (1957), reversal was caused by a juror's failure to reveal information that would have generated a peremptory challenge. But, the potentially biased juror, as a result, sat on the jury.