**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0580-19

BARBARA CULLEN and JOHN
CULLEN,

     Plaintiffs-Appellants,

v.

CONCENTRA, INC.,
CONCENTRA HEALTH
SERVICES, INC., CONCENTRA
WEST NEW YORK,
CONCENTRA MEDICAL
CENTERS, CONCENTRA
URGENT CARE, and
CONCENTRA URGENT CARE
MEDICAL CENTERS,

     Defendants-Respondents,

and

COUNTY OF HUDSON,
HUDSON COUNTY
DEPARTMENT OF FAMILY
SERVICES, INSTITUTE OF
SCIENCE AND TECHNOLOGY,
NEW JERSEY DEPARTMENT
OF HUMAN SERVICES-
DIVISION OF FAMILY

DEVELOPMENT, LOGISTICARE
SOLUTIONS, LLC,
LOGISTICARE, LOGISTICARE
MEDICAL TRANSPORTATION,
ACCESS CARE
TRANSPORTATION CORP.,
MADELINE DIAZ, RICHARD
A. BOIARDO, M.D., CROSS
COUNTY ORTHOPAEDICS, P.C.,
PROGRESSIVE INSURANCE
COMPANY,

     Defendants.

_____

> Argued January 4, 2021 – Decided February 10, 2021
>
> Before Judges Currier and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2911-17.
>
> William L. Gold argued the cause for appellants (Bendit Weinstock, PA, attorneys; William L. Gold, on the briefs).
>
> Janet L. Poletto argued the cause for respondents (Hardin Kundla McKeon & Poletto, PA, attorneys; Janet L. Poletto, of counsel and on the brief; Robert E. Blanton, Jr., on the brief).

PER CURIAM

Plaintiffs Barbara and John Cullen, a married couple, appeal from a no-cause verdict following a jury trial on their personal injury complaint,

challenging only the jury selection process.[1]  The jury's verdict was memorialized in a September 26, 2019 order of final judgment in favor of defendants Concentra, Inc., Concentra Health Services, Inc. d/b/a Concentra Medical Centers and d/b/a Concentra Urgent Care[2] (collectively, Concentra), effectively dismissing the Cullen complaint with prejudice.  We affirm.

We glean these facts from the record.  In July 2017, plaintiffs filed a complaint and jury demand against defendants and others[3] alleging claims sounding in negligence.  Specifically, the complaint alleged that on July 27, 2015, while volunteering at defendants' medical facility, plaintiff Barbara Cullen sustained injuries when she tripped and fell over a wire.  Five months later, on December 22, 2015, Barbara[4] was involved in a motor vehicle accident while being transported from medical treatment for the injuries sustained during

---

[1]  On October 25, 2019, the trial court entered an order granting plaintiffs' motion for "abbreviated transcripts limited to the court's selection of the jury." See R. 2:5-3(c).

[2]  Improperly pled as Concentra Health Services, Inc.

[3]  Several other defendants were named in the complaint but were dismissed prior to trial.

[4]  We refer to the Cullens by their first names to avoid any confusion caused by their common surname and intend no disrespect.

the fall.  The complaint sought damages for injuries sustained in the automobile accident as well as the fall on defendants' premises.[5]

Prior to the commencement of jury selection, in plaintiffs' pretrial exchange submitted to the court and counsel in accordance with Rule 4:25-7, plaintiffs

> request[ed] the standard voir dire questions in the Supreme Court Guidelines as well as the following open-ended questions:
>
> 1. Do you believe in evolution?  If not, why?
>
> 2. Do you believe that humans are at least partially responsible for global climate change?  If not, why?

On September 10, 2019, jury selection commenced.  Following an off-the-record conference, with the agreement of counsel for both parties, the court provided the prospective jurors with a printed copy of the final voir dire questionnaire for use during jury selection.[6]  The questionnaire contained

---

[5] John asserted a per quod claim alleging deprivation of "the services, consortium, and companionship" of his wife.

[6]  With plaintiffs' consent, we granted defendants' motion to supplement the record with plaintiffs' pretrial exchange as well as the final voir dire questionnaire utilized during jury selection.

twenty-one standard questions that mirrored the "Model Jury Selection Questions" promulgated in Administrative Directive #4-07,[7] nine special voir dire questions, ten biographical questions, and the omnibus questions.

In addition to the two open ended questions requested in plaintiffs' pretrial exchange, the special voir dire questions, which were tailored to the case, asked: (1) whether the juror, "by reason of religious or other convictions, [did] not believe in medicine, doctors, certain medical treatments or hospitals"; (2) whether the juror, any family member, or close friend had "ever been diagnosed with an orthopedic injury;" (3) whether the juror, any family member, or close friend was "ever . . . involved in a motor vehicle accident in which injuries were sustained"; (4) whether the juror, any family member, or close friend "ever utilized the services of Logisticare Medical Transportation or Access Care Transportation Corp."; (5) whether the juror, any family member, or close friend "ever received treatment from or at a Concentra facility"; (6) whether the juror, any family member, or close friend "ever had an experience with a hospital, urgent care facility, minute clinic or doctor's office, good or bad, that would impact [the juror's] ability to be fair and impartial in th[e] case"; and (7) whether

---

[7] See Administrative Directive #4-07, "Jury Selection — Model Voir Dire Questions Promulgated by Directive #21-06 — Revised Procedures and Questions" (May 16, 2007).

the juror, any family member, or close friend was "ever . . . involved as either a plaintiff or defendant in a slip and fall accident in which an injury resulted."

After the jurors reviewed and completed the questionnaire, they were questioned individually by the judge in open court in counsels' presence. During the questioning, the judge referred to the questions by numbers, clarified questions if jurors were uncertain or confused, and asked follow-up questions if called for by the jurors' response. At no point during the jury selection process did plaintiffs' counsel object to the procedure utilized or the questions posed by the judge. By the conclusion of jury selection, plaintiffs had exhausted all six of their peremptory challenges. See R. 1:8-3(c). After a jury was empaneled, trial commenced. The jury returned a verdict of 6-1 in favor of defendants, and this appeal followed.

On appeal, plaintiffs argue that the court erred by failing to ask "any open-ended questions," as required by Administrative Directive #04-07, and by "refusing to ask follow-up questions." According to plaintiffs, "by not allowing follow-up questions and by not allowing counsel any insight into the jurors that the mandated open-ended questions would have provided," plaintiffs were deprived "of the right to select a fair jury in the way the Supreme Court has mandated."

A-0580-19

"[L]itigants are entitled to an unbiased jury and to a fair jury selection process." Pellicer ex rel Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 40 (2009). Trial judges have the primary responsibility of "ensur[ing] that the selection of jurors is conducted in a manner that will effectuate these rights." Ibid. "In implementing the process of screening and selection, the trial judge is vested with discretion . . . ." Id. at 41. However, that discretion is guided by "jury selection methods . . . designed to ensure fairness." Ibid.

To that end, Directive #4-07[8] imposes requirements on trial courts to make the jury selection process "more expeditious and streamlined" while addressing specific issues related "to juror questioning at voir dire." Administrative Directive #4-07, at 1-2. Like its predecessor, Directive #4-07, which "is unquestionably binding on all trial courts," State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007), is "intended to provide for a full and complete voir dire of prospective jurors so that reasons for any appropriate challenges for cause can be discovered and so that counsel is provided with information that

---

[8] Directive #4-07 supplements and modifies Directive #21-06. See Administrative Directive #21-06, "Approved Jury Selection Standards " (Dec. 11, 2006). Directive #21-06 required trial judges to ask each individual juror a set of standard questions, as well as questions tailored to the individual case. Directive 4-07 "modifies voir dire procedures set forth in Directive #21-06," and "supersedes the relevant portions of that Directive."

may be relevant to their lawful exercise of peremptory challenges."

Administrative Directive #4-07, at 1.

Specifically, Directive #4-07 states:

> At the beginning of the voir dire process, each prospective juror in the panel shall be furnished with a printed copy of the voir dire questions, which shall consist of all the standard questions for the case type, as supplemented and determined by the judge at the Rule 1:8-3 conference. The form of these questions calls for a yes or no answer . . . .
>
> . . . .
>
> In addition to the printed questions, the judge shall also inform the jurors in the box and the array that jurors will also be individually asked several questions that they will be required to answer in narrative form. One such question will be the biographical question contained in the standard questionnaire. In addition to the biographical question, several other open-ended questions will be posed to prospective jurors . . . .
>
> . . . .
>
> The judge may read all of the questions one time before addressing each juror in the box individually. The judge shall . . . inquire whether the juror answered yes or uncertain to any of them. If so, appropriate follow up questions shall be asked. The judge will then ask that juror each of the open-ended questions, to which a verbal response shall be given and for which appropriate follow up questions will be asked. Each juror must then be verbally asked the two omnibus qualifying questions that follow the biographical question in the lists of standard questions . . . .

Questioning shall be in open court or at sidebar, in the discretion of the court, with input from counsel.

    . . . .

When questioning the jurors about the written form, the judge must refer to questions by number or description, sufficient to establish for the record the question to which the juror is responding . . . .

Some open-ended questions must be posed verbally to each juror to elicit a verbal response. The purpose of this requirement is to ensure that jurors verbalize their answers, so the court, attorneys[,] and litigants can better assess the jurors' attitudes and ascertain any possible bias or prejudice, not evident from a yes or no response, that might interfere with the ability of that juror to be fair and impartial. Open-ended questions also will provide an opportunity to assess a juror's reasoning ability and capacity to remember information, demeanor, forthrightness or hesitancy, body language, facial expressions, etc. It is recognized that specific questions to be posed verbally might appropriately differ from one case to another, depending upon the type of case, the anticipated evidence, the particular circumstances, etc. Therefore, rather than designating specific questions to be posed verbally to each juror, the determination is left to the court, with input from counsel, in the case.

    . . . .

The judge must ask at least three such questions, in addition to the biographical question and the two omnibus qualifying questions. This is a minimum number and judges are encouraged to ask more where such action would be appropriate . . . .

9

. . . .

> While use of the standard voir dire questions is mandatory, judges in their discretion may alter the sequence of the questions as they determine is appropriate – including whether to ask key challenge for cause questions early on, to incorporate questions suggested by counsel, or to integrate case type specific questions . . . . The voir dire questions to be asked, including the sequence in which to ask them, modifications of wording on a case-appropriate basis, the inclusion of supplemental questions requested by counsel, and the proposed open-ended questions, should be part of the Rule 1:8-3 conference.
>
> [Administrative Directive #4-07, at 3-5 (paragraph numbers omitted).]

In Gonzalez v. Silver, 407 N.J. Super. 576, 597 (App. Div. 2009), we noted the importance of Directive #4-07's requirements. However, while it was error in Gonzalez for the judge not to have asked the three open-ended questions required by the Directive, "we also recognize[d] that a certain residual discretion resides in the trial judge to accommodate the individual circumstances of each case and the consensus views of counsel, even when doing so renders the voir dire procedure less than fully conforming to the Directive['s] mandates." Id. at 597. In fact, we specifically did not determine whether the failure to follow "the strict requirements" of the Directive "constituted reversible error." Id. at 598.

To support their position that reversal is mandated, plaintiffs rely on unreported decisions in which our colleagues concluded a failure to follow the Directive's requirements required reversal. Although those decisions are counterbalanced by unreported decisions reaching a contrary conclusion, none of those decisions are either precedential or binding upon us. See R. 1:36-3. Instead, where, as here, plaintiffs raise the issue for the first time on appeal, we review for plain error. See R. 2:10-2. Under that standard, an error does not warrant a new trial "unless it is of such a nature as to have been clearly capable of producing an unjust result." Ibid. Because a litigant "is entitled to a fair trial but not a perfect one," an error must have caused harm, or a likelihood of harm, in order to warrant a reversal. State v. R.B., 183 N.J. 308, 334 (2005) (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)).

Applying that standard, we conclude the judge's failure to follow the Directive by asking three open-ended questions was not "of such a nature as to have been clearly capable of producing an unjust result" on the limited record provided on appeal. R. 2:10-2. To support our conclusion, we rely on the absence of any objection to the voir dire procedure by plaintiffs' counsel either

11

contemporaneously or after the verdict.[9] We are also persuaded by the fact that the judge asked the two open-ended questions plaintiffs requested as well as seven special voir dire questions tailored to the facts in the case. Indeed, as we noted in Gonzalez, "plaintiff[s were] somewhat complicit in the procedure ultimately employed." 407 N.J. Super. at 596. We may infer that the court's error did not cause any harm from counsel's "seeming[] satisf[action] with the court's voir dire questions, which included his requested inquiry . . . ." Id. at 597. We are therefore satisfied that the judge's failure to follow the Directive's requirements in the jury selection procedure did not lead to an unjust result or "a 'miscarriage of justice'" requiring reversal. Id. at 596 (quoting R. 2:10-1).

We also reject as unfounded plaintiffs' contentions that the judge's refusal to ask follow-up questions deprived them "of the right to select a fair jury in the way the Supreme Court has mandated." To support their contentions, plaintiffs point to three specific instances. In the first instance, the following exchange occurred between the court and counsel:

[PLAINTIFFS' COUNSEL]: Judge, do we approach?

THE COURT: I don't see why.

_____

[9] We do not mean in any way to detract from the importance of following proper voir dire protocol, as provided in Administrative Directive #4-07. See Morales, 390 N.J. Super. at 472-73.

12                                                          A-0580-19

[PLAINTIFFS' COUNSEL]:  I have a challenge for cause.

THE COURT: For cause?

[PLAINTIFFS' COUNSEL]:  For cause.

THE COURT:  All right [sic].

(Sidebar begins)

[PLAINTIFFS' COUNSEL]:  Juror Number [Five's] answer to the torts claim question seems to suggest he doesn't believe people . . . should have the right to sue at all.

THE COURT:  Okay.  I disagree.  But you want me to excuse him, use your challenge.  Thank you.

(Sidebar ends)

[PLAINTIFFS' COUNSEL]:  Judge, please excuse Juror Number [Five] with our - -

THE COURT:  You're excused, sir.

[PLAINTIFFS' COUNSEL]:  - - thanks.

Counsel neither requested a follow-up question nor objected to the judge's refusal to excuse the juror for cause.  Moreover, the record sheds no light on why the juror's response to the "torts claim question" warranted a challenge for cause or provided grounds to excuse for cause.  In Catando v. Sheraton Poste Inn, 249 N.J. Super. 253, 264-65 (App. Div. 1991), we described the requisite

13

"showing [that] must be made on the record of the jury selection itself" for an erroneous denial of a challenge for cause to be cognizable on appeal. We explained that "prompt" objections to the seating of the juror "while the judge still has the capacity to deal with it, insures that avoidable error does not inadvertently creep in to the proceedings" and "avoid[s] later disputes over the question of what objections were actually brought to the court's attention." Ibid. Here, plaintiffs have failed to make the requisite showing on the record before us.

In the second instance, the following exchange occurred:

> [PLAINTIFFS' COUNSEL]: Judge, can we approach?
>
> THE COURT: Okay.
>
> (Sidebar begins)
>
> [PLAINTIFFS' COUNSEL]: It's Juror Number [Seven]. Question number [twelve] again. Can you explain to him that you charge how the jury is to calculate damages, and can he accept that?[10]

---

[10] Question twelve stated that "[t]he court [was] aware that there ha[d] been a great deal of public discuss[ion] about something called Tort Reform (laws that restrict the right to sue or limit the amount recovered[)]" and asked the prospective juror whether he or she "[had] an opinion, one way or the other on this subject" and, if so, to "explain . . . it." Juror number seven had responded that he had no problem with the right to sue but expressed concern about damage awards being "fair."

14

THE COURT:   . . . [H]e's already answered that question.  I'll say it in my instructions.  I'm not going to do it now.

[PLAINTIFFS' COUNSEL]:  Judge, the idea of asking the question is not to create challenges; it's to create understanding of where the juror is.  And I don't want to challenge a juror just because his answer was confusing.

THE COURT:  But the answer is not confusing.  Okay?  If you really want me to ask the question - - can you follow my instructions on damages?  Do you want me to ask that question?

[PLAINTIFFS' COUNSEL]:  Yes.

        (Sidebar ends)

THE COURT:   Juror Number [Seven], could you follow my instructions on damages?

[PROSPECTIVE JUROR NUMBER SEVEN]:  Would I follow it?

THE COURT:  Yeah.

[PROSPECTIVE JUROR NUMBER SEVEN]:  Yeah.

[PLAINTIFFS' COUNSEL]:  Fine.  Thank you, Judge.  Judge, please excuse Juror Number [Six] with our thanks.

THE COURT:  Okay.  Number [six] . . . .  You're excused, sir.  Thank you very much.

15

A-0580-19

Plaintiffs' contention that the judge refused to ask a follow-up question is clearly belied by the record. The judge asked the follow-up question requested by counsel, who then exercised a peremptory challenge to excuse a different prospective juror. We are satisfied that the information elicited from prospective juror number seven was sufficient for counsel to make an informed decision as to whether to exercise a peremptory challenge or seek removal for cause. See Wright v. Bernstein, 23 N.J. 284, 294 (1957) ("[T]he question is whether the right of challenge was denied by the prospective juror's failure to disclose the information sought pertinent and necessary to the decision of counsel.").

In the third and final instance, plaintiffs take issue with the judge's voir dire of prospective juror number one. During questioning, the juror, a physical therapist, informed the judge that while he was not an employee of Concentra, he "work[ed] in a doctor's office and a physical therapy clinic" that treated patients "refer[red] from Concentra." When asked by the judge whether that fact would "impact [the juror's] ability to be fair," the juror responded "[n]o."

Once the judge seated the juror, the following colloquy ensued between the court and plaintiffs' counsel:

> [PLAINTIFFS' COUNSEL]: Could we approach, Judge?

16

THE COURT:  You may.

(Sidebar begins)

[PLAINTIFFS' COUNSEL]:  With due respect, Judge, I think you got Juror Number [One] to change answers that were significant.  I think he was saying he gets people from Concentra and knows them, and therefore, it's an objection for cause.

THE COURT:  That's what he said?

[PLAINTIFFS' COUNSEL]:  He said he gets patients from Concentra several times.

THE COURT:  I know that.

[PLAINTIFFS' COUNSEL]:  Yeah, so . . . he knows a party.  He knows people who come from that party. He's got a relationship with that party.

THE COURT:  Wait.  How did I change his answer?

[PLAINTIFFS' COUNSEL]:  He consistently said Concentra, and you kept changing it from Concentra to companies.

THE COURT:  That changes the answer?

[PLAINTIFFS' COUNSEL]:  But the - -

THE COURT:  I said I (indiscernible) - -

(Sidebar ends)

THE COURT:  Sir, you treat patients who come from Concentra, right?

17

PROSPECTIVE JUROR [NUMBER ONE]:  Yes.

THE COURT:  Would that have any impact whatsoever on your ability to be fair in this trial?

PROSPECTIVE JUROR [NUMBER ONE]:  (No audible response).[11]

THE COURT:  Thank you.

[PLAINTIFFS' COUNSEL]:  Please excuse Juror Number [One], Judge.

THE COURT:  You're excused, sir.  Thank you very much.

Again, plaintiffs' contention that the judge failed to ask follow-up questions is belied by the record.  After asking appropriate follow-up questions and re-confirming that the juror could be fair and impartial, the judge seated the juror.  We are satisfied that the information elicited from the juror was sufficient for counsel to make an informed decision as to whether to exercise a peremptory challenge, as occurred,[12] or seek removal for cause, which counsel failed to do.  In any event, any "failure to dismiss the juror for cause" is harmless where, as

---

[11]  We presume from the court's and counsel's reaction to the juror's response that the juror responded in the negative.

[12]  After exercising that challenge, plaintiffs had at least one remaining peremptory challenge.

here, "'the party . . . use[s] an available peremptory challenge to excuse the juror.'" Arenas v. Gari, 309 N.J. Super. 1, 20 (App. Div. 1998) (quoting Catando, 249 N.J. Super. at 264).

Additionally, we dismiss plaintiffs' assertion that the jury selection process "put [their] counsel in a bad light, by making it appear as though he was objecting and removing jurors for no reason." Prior to commencing the jury selection process, the judge instructed the prospective jurors:

> The attorneys who represent the parties in this lawsuit have the right to exercise challenges excusing jurors without giving any reason for doing so. This is permitted by our court rules. If you're excused in that manner, please don't take it personally. No offense is intended. The law traditionally gives each attorney [the right] to have a limited number of jurors excused for no expressed reasons.

We presume that juries follow the court's instructions. See Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 97 (App. Div. 2013) (citing State v. Feaster, 156 N.J. 1, 65 (1998)).

In sum, the jury selection process in its entirety was comprehensive, and the record provides no ground on which to conclude that the jury empaneled was not "the fair and unbiased, impartial decision-maker that is fundamental to our system of justice." Pellicer, 200 N.J. at 48. To the extent any argument raised by defendant has not been explicitly addressed in this opinion, it is because the

19

argument lacks sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0580-19